Matthew Dirkes (State Bar No. 255215)
matt@illovskygates.com
ILLOVSKY GATES & CALIA LLP
1611 Telegraph Ave., Ste. 806
Oakland, CA 94612
Telephone: (415) 500-6640

Counsel for Defendant
Francis Diaz-Cruz

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>FRANCIS DIAZ-CRUZ,<br><br>        Defendant. | Case No. 3:24-cr-00311-JD-4<br><br>**FRANCIS DIAZ-CRUZ'S SENTENCING MEMORANDUM**<br><br>Date:      August 11, 2025<br>Judge:    Hon. James Donato<br>Courtroom: 11, 19th Floor<br>Time:     10:30 a.m. |

Francis Diaz-Cruz submits this memorandum for the Court's consideration in connection with his upcoming sentencing. He agrees with the Sentencing Guidelines calculation in the Presentence Investigation Report and the resulting Guidelines range of 10-16 months. PSR, ECF No. 140, ¶ 32; PSR Sentencing Recommendation at 1. He also agrees with the Probation Office's recommended sentence of credit for time served, given that he has been in continuous federal custody for almost 15 months. PSR Sentencing Recommendation at 1. Such a sentence would be adequate and no greater than necessary to provide just punishment given the characteristics of Mr. Diaz-Cruz, the nature of the offense, and the other statutory factors the Court will consider.

## I. History and Characteristics of Mr. Diaz-Cruz

Mr. Diaz-Cruz was born and raised in Honduras. The country "has a long history of military rule, corruption, poverty and crime which have left it one of the least developed and most unstable countries in Central America."[1] Honduras "remains among the poorest and most unequal countries in Latin American and the Caribbean."[2] About half of the population lives below the poverty line, defined as earning just $6.85 per capita per day.[3] "Human development outcomes in the country are among the lowest in the region," and according to the World Bank's Human Capital Index, "a child born in Honduras will be almost half (48%) as productive when they grow up as they could be if they received a complete education and enjoyed full health."[4]

Mr. Diaz-Cruz's childhood in Honduras was marked by horrific poverty, neglect, violence, and abuse. His father abandoned the family shortly after Mr. Diaz-Cruz was born. PSR ¶ 47. His mother raised him and his three siblings in a one-room shack that lacked running water or electricity. PSR ¶ 49. His mother was emotionally and physically abusive, going so far as to punish him by placing a red-hot metal rod on his arm. PSR ¶ 52. Unable to provide financially for Mr. Diaz-Cruz and his three siblings, his mother was forced to turn to illicit means to feed and clothe them. *Id.* As

---

[1] https://www.bbc.com/news/world-latin-america-18954311 (last visited July 26, 2025).

[2] https://www.worldbank.org/en/country/honduras/overview (last visited July 26, 2025).

[3] *Id.*

[4] *Id.*

an 11-year-old, Mr. Diaz-Cruz suffered traumatic abuse as a result. PSR ¶ 50. Days-long absences by his mother forced him to become the primary caretaker for his younger siblings, for whom he cooked, cleaned, and even changed their diapers. PSR ¶ 49. His own basic needs often were unmet and he frequently went to bed hungry. *Id.* He became a target at school for bullies because of his poverty and was beaten by older students on a weekly basis. PSR ¶ 52.

Not surprisingly, and after completing six years of school, Mr. Diaz-Cruz left home at the age of 11. PSR ¶¶ 65, 66. He repeatedly, and sometimes successfully, sought to enter the United States in search of economic opportunities that did not exist in Honduras. PSR ¶ 65. Although he could read and write in Spanish, he knew the importance of learning English and enrolled in English classes upon arriving in San Francisco in the early 2000s. PSR ¶ 65. He found steady work in a restaurant for several years and then worked in the construction industry. PSR ¶ 68. Each month he sent his family in Honduras roughly half of what he earned. *Id.*

The Court undoubtedly will have concerns about the number of times Mr. Diaz-Cruz has reentered the United States and then been removed. Mr. Diaz-Cruz can only respond that those decisions were driven by necessity and the dire economic circumstances he and his family faced, and continue to face, in Honduras. The risk of arrest and deportation was worth the potential economic opportunities here, though, as Mr. Diaz-Cruz informed the Probation Office, he has no plans of ever returning given his young family back home. PSR ¶ 58. This case has shown him that the potential economic rewards that have lured him back here over the years are now dwarfed by the risks of reentering the U.S. He had only been here for two weeks – after traveling across the deserts of California by foot for 17 days – and was unhoused and living in an encampment on Larkin Street when he was arrested. PSR ¶ 48. According to Mr. Diaz-Cruz, "this time [was] not like the others," PSR ¶ 58, and any risk of him again attempting to reenter the U.S. is quite small after this experience.

## II.    Nature of the Offense

Mr. Diaz-Cruz pleaded guilty to one count of illegal reentry after commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a)(1), (b)(2). Plea Agreement, ECF No. 123. Mr. Diaz-Cruz and others were arrested by the FBI and DEA after the agents observed the other

individuals (but not Mr. Diaz-Cruz) engage in suspected drug trafficking. PSR ¶¶ 12-18. No drugs were found on Mr. Diaz-Cruz. PSR ¶ 17.

### III.    A Sufficient and Fair Sentence

A sentence must be "not greater than necessary" to "provide just punishment," deter criminal behavior, and protect society. 18 U.S.C. § 3553(a). "The Supreme Court has consistently instructed that 'the punishment should fit the offender and not merely the crime,' and thus judges should use 'the fullest information possible concerning the defendant's life and characteristics' to determine the appropriate sentence." *United States v. Trujillo*, 713 F.3d 1008-09 (9th Cir. 2013) (quoting *Pepper v. United States*, 131 S. Ct. 1229, 1235, 1240 (2011)).

A sentence of credit for time served would provide just punishment in this case. The almost 15 months Mr. Diaz-Cruz has spent in Santa Rita Jail has, without any doubt, punished him. 18 U.S.C. § 3553(a)(2)(A). He's been separated from his family, unable to easily communicate with them, and unable to work and financially support them, which were the sole reasons he had returned here.

The requested sentence also will deter future criminal conduct. 18 U.S.C. § 3553(a)(2)(B). A longer sentence would not increase specific deterrence. The Department of Justice itself has reached that same conclusion. The National Institute of Justice, the research, development and evaluation agency of the Department of Justice, concluded in 2016 that "the chance of being caught is a vastly more effective deterrent than even draconian punishment."[5] "[P]rison sentences (particularly long sentences) are unlikely to deter future crime."[6] In fact, prison sentences may actually lead to increased future criminal behavior: "Persons who are incarcerated learn more effective crime strategies from each other, and time spent in prison may desensitize many to the threat of future

---

[5] https://nij.ojp.gov/topics/articles/five-things-about-deterrence (last visited July 26, 2025).

[6] *Id.*

imprisonment."[7] Requiring Mr. Diaz-Cruz to spend additional time in custody before he is deported would not add any more deterrence or reduce the risk of recidivism.

For the same reasons, a longer sentence would not better protect the public from future crimes by him. 18 U.S.C. § 3553(a)(2)(C). This is especially true given that Mr. Diaz-Cruz is now 41 years old. As the U.S. Sentencing Commission has concluded, age exerts a strong influence on recidivism across all sentence length categories. U.S. Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders, December 2017.[8] "Older offenders [are] less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed." *Id.* Although there was some association for younger offenders between the length of the original federal sentence and the rearrest rates, "among all offenders sentenced to one year or more of imprisonment, there was no clear association between the length of sentence and the rearrest rate." *Id.*

The almost 15 months that Mr. Diaz-Cruz has spent in custody is an adequate sentence in this case. He should be permitted to return to Honduras to help care for his family, including his four children and his common-law wife, who is in treatment for ovarian cancer. PSR ¶ 55. Once back in Honduras, he'll help run his family store and provide support to his eldest daughter, who will be enrolling in college next year. PSR ¶¶ 57, 58.

## CONCLUSION

For the reasons stated, Francis Diaz-Cruz respectfully suggests that a sentence of credit for time served is sufficient and no greater than necessary to impose just punishment in this case.

Dated: July 28, 2025

/s/Matthew Dirkes
Matthew Dirkes
Attorney for Francis Diaz-Cruz

---

[7] *Id.*

[8] Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last visited July 26, 2025).